UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                                           :

N.J. and G.J.,                                                        :

                                               :

                                Plaintiffs,           :

                                                 :           18-CV-6173 (JMF)

                      -v-                                     :

                                                 :           <u>OPINION AND ORDER</u>

NYC DEPARTMENT OF EDUCATION, NYC BOARD   :
OF EDUCATION, and CHANCELLOR MEISHA ROSS   :
PORTER, *in her official capacity*,                          :

                                             :

                                  Defendants.          :

                                                 :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      The Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C.

§§ 1400 *et seq*., requires any state receiving federal funds to provide a disabled child with a fair

and adequate public education, often referred to as a "FAPE."  In this case, Plaintiff N.J. and her

twenty-three-year-old son, G.J., contend that the New York City Department of Education

("DOE") and affiliated Defendants deprived them of a FAPE in violation of the IDEA for many

years.  *See* ECF No. 48 ("TAC"), ¶¶ 3, 503.  They also raise claims pursuant to Section 504 of

the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"),

42 U.S.C. §§ 12131 *et seq*; 42 U.S.C. § 1983; and New York state law.  TAC ¶¶ 501-60.

Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial

summary judgment.  ECF No. 62.  In particular, they contend that Plaintiffs' IDEA claims

relating to the school years between 2004-05 and 2011-12, as well as their corresponding claims

under the ADA, Section 504, and Section 1983, are time-barred.  *See* ECF No. 63 ("Defs.'

Partial MSJ Br."), at 1-2.  For the reasons that follow, Defendants' motion is GRANTED as to

all claims at issue save Plaintiffs' "systemic" IDEA claims.

## STATUTORY FRAMEWORK

"Congress enacted the IDEA to promote the education of students with disabilities." *A.M. ex rel. Y.N. v. N.Y.C. Dep't of Educ.*, 964 F. Supp. 2d 270, 274 (S.D.N.Y. 2013) (internal quotation marks omitted).  The statute requires any state receiving federal funds to provide disabled children with a FAPE.  *R.E. ex rel. J.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 174-75 (2d Cir. 2012).  To that end, school districts are required to "create an individualized education program ('IEP') for each such child" with disabilities.  *Id.* at 175 (citing 20 U.S.C. § 1414(d); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (Sotomayor, J.)); *see also Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006) ("The key element of the IDEA is the development of an IEP for each handicapped child . . . .").  An IEP is "a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *R.E.*, 694 F.3d at 175 (internal quotation marks omitted).  An IEP must be "reasonably calculated to enable the child to receive educational benefits." *Id.* (internal quotation marks omitted).

In New York, a Committee on Special Education ("CSE") — composed of the student's parent or parents, a regular or special education teacher, a school board representative, a parent representative, and others appointed by the local school district's board of education — is responsible for developing an IEP.  *See* N.Y. Educ. Law § 4402(1)(b)(1); *see also Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 123 (2d Cir. 1998).  When doing so, a "CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program." *R.E.*, 694 F.3d at 175.  To comply with its substantive obligations under the IDEA, a school district is required to provide "an IEP that is 'likely to produce progress, not

regression.'" *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) (quoting *Walczak*, 142 F.3d at 130).

A parent of a child with a disability has the right to bring a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child."  20 U.S.C. § 1415(b)(6)(A).  If the district does not resolve the complaint — commonly known as a due process complaint ("DPC") — the parent has the right to an "impartial due process hearing."  *Id.* § 1415(f).  In New York, such hearings are conducted by an Impartial Hearing Officer ("IHO") appointed by the local school district.  N.Y. Educ. Law § 4404(1)(a).  If dissatisfied with an IHO's ruling, either party may appeal the case to a State Review Officer ("SRO").  *Id.* § 4404(2).  "After exhausting administrative remedies through this process, either party may," in turn, "bring a civil action in state or federal court to review the SRO's decision" under the IDEA.  *N.M. v. N.Y.C. Dep't of Educ.*, No. 15-CV-1781 (JMF), 2016 WL 796857, at *2 (S.D.N.Y. Feb. 24, 2016) (citing 20 U.S.C. § 1415(i)(2)(A)).

Of particular importance to this case, in the wake of amendments to the IDEA that took effect in July 2005, parents must request an impartial due process hearing "within 2 years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint."  20 U.S.C. § 1415(f)(3)(C); *see also* N.Y. Educ. Law § 4404(1)(a) (similar); *K.H. v. N.Y.C. Dep't of Educ.*, No. 12-CV-1680 (ARR) (MDG), 2014 WL 3866430, at *3 (E.D.N.Y. Aug. 6, 2014).  "Determining when a parent knew or should have known is necessarily a fact-specific inquiry."  *K.C. v. Chappaqua Cent. Sch. Dist.* ("*K.C. II*"), No. 16-CV-3138 (KMK), 2018 WL 4757965, at *14 (S.D.N.Y. Sept. 30, 2018) (internal quotation marks omitted).  That said, the IDEA provides that the two-year statute of limitations is subject to tolling in either of two circumstances.  Specifically, a claim will not be considered time-barred if "the parent was

prevented from requesting the hearing due to . . . (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local educational agency's withholding of information from the parent" that is required to be provided under the IDEA.  20 U.S.C. § 1415(f)(3)(D).

## FACTUAL BACKGROUND

The following facts, taken from the pleadings and admissible materials submitted by the parties in connection with the partial motion for summary judgment, are either undisputed or described in the light most favorable to Plaintiffs.  *See, e.g.*, *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157-58 (2d Cir. 2012).

## A.  G.J.'s Medical and Educational History

G.J. was born in 1997 and diagnosed as a young child with various medical conditions, including cerebral palsy, strabismus (a vision disorder), and periventricular leukomalacia (a type of brain damage).  ECF No. 78 ("Pls.' 56.1 Counter-Stmt."), ¶¶ 2-5.[1]  After receiving early intervention and pre-school services as a young child, G.J. entered the public school system for kindergarten, at which time he was placed in a special education classroom.  *Id.* ¶ 6; JA 9, 699.[2]

---

[1]      Plaintiffs' Rule 56.1 Counter-Statement, ECF No. 78, is problematic on at least two fronts.  *First*, there is a discrepancy between the paragraph numbering system in Defendants' Statement, ECF No. 64, and Plaintiffs' Counter-Statement, ECF No. 78, seemingly caused by Plaintiffs' erroneous introduction of a paragraph "19" that does not appear in the former.  *See* Pls.' 56.1 Counter-Stmt. ¶ 19; *see also* ECF No. 84 ("Defs.' Reply Br."), at 4.  *Second*, although Plaintiffs' Counter-Statement purports to identify disputes in the factual record, it is filled with irrelevant facts, argument, and semantic objections.  To the extent Plaintiffs "identify disputed facts but with semantic objections only or by asserting irrelevant facts, . . . which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact."  *Gjini v. United States*, No. 16-CV-3707 (KMK), 2019 WL 498350, at *1 n.4 (S.D.N.Y. Feb. 8, 2019) (collecting cases).

[2]      The parties — as well as the administrative proceedings below — have used various, and often confusing, naming systems for documents in the record.  Each document in the record

Since at least 2004, when G.J. was seven years old and in second grade, his mother N.J. has been raising concerns about the ways in which her son's disabilities were being categorized and accommodated.  A September 28, 2004 "Social Update" filed by the DOE, for example, indicates that N.J. raised concerns about G.J.'s severe reading and writing deficits and believed that he might "be in the wrong placement" as he "seem[ed] not to be making adequate progress in school."  Pls.' 56.1 Counter-Stmt. ¶ 25 (internal quotation marks and emphasis omitted); JA 9, 756.  The Update also indicated that N.J. "seem[ed] very aware of problems and want[ed] to help and support to get [G.J.] on track."  Pls.' 56.1 Counter-Stmt. ¶ 25 (internal quotation marks and emphasis omitted).  Similarly, in November 2004, during a speech and language evaluation, N.J. expressed concern that G.J. was not learning, reading, or writing.  *Id.* ¶¶ 18-19.

In October and November 2004, G.J. received a series of evaluations at the International Center for the Disabled.  During his psychological evaluation, the evaluating psychologist noted that G.J.'s visual, motor, and academic skills were deficient and recommended that he continue receiving support services in school, including speech and language, occupational, and physical therapies.  *Id.* ¶¶ 9-12; JA 699, 701-04.  The psychologist noted that N.J. was "concerned that [G.J.] is not reading or writing" and wanted to "ensure" that G.J. "is receiving the proper services."  JA 699.  Meanwhile, G.J.'s speech and language evaluation documents that N.J.'s "main concern[]" was that G.J. was "not learning reading and writing" and that she did "not understand how he got promoted to 2nd grade."  JA 711 (internal quotation marks omitted).

Beginning in June 2005, G.J. was placed in a nonpublic school called United Cerebral Palsy of Westchester ("UCP"), which he attended through the 2007-08 school year.  Pls.' 56.1

submitted here has been Bates stamped with a "Joint Appendix" number.  To avoid confusion, the Court refers here to documents in the record by their terminal Bates stamp numbers.

Case 1:18-cv-06173-JMF   Document 86   Filed 03/15/21   Page 6 of 31

Counter-Stmt. ¶ 37; JA 9.  A "Corrected Social Update" filed by the DOE on January 5, 2007, noted that N.J. was "openly critical about [the school] program not providing enough for" G.J. and "adamant [that the new] school [was] not meeting [G.J.'s] needs."  Pls.' 56.1 Counter-Stmt. ¶ 26 (internal quotation marks omitted); JA 3, 761.  The document noted that there appeared to be "a disparity" between the "evaluation team's understanding of [G.J.'s] serious deficits and [her] understanding of his needs."  Pls.' 56.1 Counter-Stmt. ¶ 26; JA 3, 761.  The Corrected Social Update also noted that N.J.'s due process rights were discussed at the interview.  Pls.' 56.1 Counter-Stmt. ¶ 28; JA 761.

On June 18, 2007, a CSE approved an IEP for the 2007-08 school year that recommended G.J. continue to attend UCP and also participate in the New York State Alternate Assessment ("Alternate Assessment") track as a result of "global delays."  Pls.' 56.1 Counter-Stmt. ¶¶ 41-43; JA 1245, 1262.  Alternate Assessment, which is meant for students with the most severe disabilities, employs a portfolio-based approach to learning standards instead of standardized testing.  Pls.' 56.1 Counter-Stmt. ¶¶ 43-44.  Dissatisfied with her son's accommodations, on January 17, 2008, N.J. sent a letter to the CSE complaining that G.J. was "not getting the academic challenge that is needed" because "most of the children in his class [at UCP] are lower functioning than he is."  JA 1615; *see also* Pls.' 56.1 Counter-Stmt. ¶ 46.  She indicated that she was interested in transferring G.J. to another school so he could "be more challenged" and closer to home.  JA 1615; Pls.' 56.1 Counter-Stmt. ¶ 46.

Over the next few months, N.J. continued to express misgivings about her son's placement at UCP.  For instance, on February 6, 2008, Dr. Maxim Kramer, a psychologist who evaluated G.J., noted that N.J. took issue with her son's placement on the ground that his "peers . . . are low functioning" and that "[s]he would like to have him transferred to another school as

she feels he is not being challenged."  JA 836, 838.  Dr. Kramer concluded that G.J. had "no

evidence of mental retardation" and that he "needs to be in school with higher functioning

peers."  *Id.* at 838-39; Pls.' 56.1 Counter-Stmt. ¶¶ 53-54.  On March 9, 2008, a CSE social

worker interviewed N.J. and reported that N.J. was "concerned with the lack of support services

[G.J. wa]s receiving."  Pls.' 56.1 Counter-Stmt. ¶¶ 61-62; JA 976.  N.J. expressed concern that

"the staff at UCP 'baby' her son" and that he was not being "challenged."  JA 977.  The

interviewer noted that N.J. was advised of her due process rights during the interview.  *Id.*  That

same day, a school psychologist evaluated G.J. and in a "Psychoeducational Update" noted that

G.J. was "referred for a re-evaluation by his mother as she is not satisfied with his school" and

felt that "he is not being challenged academically."  *Id.* at 822; Pls.' 56.1 Counter-Stmt. ¶¶ 55-

56.  A further evaluation by the same psychologist on April 6, 2008, noted that G.J.'s Full Scale

IQ score was 46, which the psychologist stated "places [G.J.] in the moderate range of mental

retardation."  JA 843; Pls.' 56.1 Counter-Stmt. ¶ 58.

On September 25, 2008, N.J. wrote a letter requesting that the CSE reconvene

"immediately" because she wanted to move G.J. to "a less restricted environment."  JA 1045; *see

also* Pls.' 56.1 Counter-Stmt. ¶ 66.  On October 7, 2008, Defendants developed a new IEP for

G.J.; a document dated October 7, 2008 — titled "Rationale" for a CSE reevaluation — records

that N.J. was unsatisfied with the schools recommended by a Central Based Support Team as

"too low functioning."  JA 979-80; Pls.' 56.1 Counter-Stmt. ¶ 69.  The new IEP recommended

that G.J. be placed in a community school — M.S. 324 (Patria Mirabel Middle School), a non-

specialized public school — and that G.J. participate in Alternate Assessment because his

"academic, language, emotional, and behavioral delays preclude [him] from participating in state

and local testing."  Pls.' 56.1 Counter-Stmt. ¶¶ 72-74; JA 933, 935.  IEPs for the 2009-10 and

2010-11 school years continued to recommend G.J.'s placement at M.S. 324 and his participation in Alternate Assessment because of "significant cognitive and academic delays." JA 1274; *see also id.* at 1292.  In 2011, G.J. was placed at P.S. X721 (Stephen McSweeney School), a public school.  JA 953; Pls.' 56.1 Counter-Stmt. ¶ 87.  A CSE, which met on May 31, 2011, developed an IEP for the 2011-12 school year and continued to recommend that G.J. participate in Alternate Assessment because of "global delays."  JA 952-53, 966; Pls.' 56.1 Counter-Stmt. ¶ 86.

**B.  The DPCs and Administrative Proceedings**

In February 2014, N.J. — proceeding without counsel — filed a one-page DPC requesting an impartial hearing, which was designated IHO Case Number 149863.  JA 3661-62; Pls.' 56.1 Counter-Stmt. ¶ 89.  On August 17, 2014, aided by her current counsel, N.J. filed an amended DPC (the "2014 DPC").  Pls.' 56.1 Counter-Stmt. ¶ 89; JA 3664-71.  In the 2014 DPC, she alleged that the DOE had failed to offer G.J. a FAPE for the 2012-13, 2013-14, and 2014-15 school years.  JA 3664.[3]  In particular, N.J. alleged that the DOE had failed to properly evaluate G.J., offer him appropriate placements, develop valid IEPs for the school years in question, employ appropriate procedures in developing the IEPs, and afford N.J. her IDEA-related procedural rights.  JA 3665, ¶ 5.  Anticipating arguments about the timeliness of her claims, N.J. alleged that the DOE had "misrepresented facts" and that G.J. had been "misdiagnosed and not

---

[3]     Through counsel, N.J. filed a second amendment to the 2014 DPC on September 21, 2015, in which she added additional allegations regarding the 2014-15 school year.  *See* JA 3673, ¶ 2.  On October 1, 2015, N.J. filed an additional DPC over claims pertaining to the same three school years, which was designated IHO Case Number 158718 and consolidated with IHO Case Number 149863.  JA 6050-53 (consolidation order).

appropriately evaluated," thus preventing her from "timely identif[ying]" his disabilities.  *Id.* at 3669, ¶ 57.[4]

On December 8, 2014, an IHO ordered an independent neuropsychological evaluation in connection with the 2014 DPC.  JA 6036-37; Pls.' 56.1 Counter-Stmt. ¶ 92.  Accordingly, in the Spring of 2015, G.J. was evaluated by Dr. Eugene Newman, a psychologist, whose July 9, 2015 report (the "2015 Neuropsychological Evaluation") diagnosed G.J. with learning disorders, a language disorder, and developmental coordination disorder.  Pls.' 56.1 Counter-Stmt. ¶¶ 95-96; JA 1138-60.  The 2015 Neuropsychological Evaluation, however, concluded that previous assessments — which relied on G.J.'s earlier IQ scores — had "inaccurately describe[d] [G.J.'s] cognitive ability."  JA 1153-54.  As a result, G.J. had been placed in Alternative Assessment, causing him to "miss[] the opportunity to take credit[-]bearing courses."  *Id.*  "It is apparent," Dr. Newman concluded, "that [G.J.] has the capacity to . . . learn the material" but "that he had not been given the chance to learn," and that if G.J. were given proper accommodations, "there is every reason to think that he can function at much higher levels."  *Id.* at 1153, 1155.  On September 9, 2015, the DOE's IEP team reconvened and decided to change G.J. from Alternate Assessment to "standard assessment."  Pls.' 56.1 Counter-Stmt. ¶ 134; JA 1171; *see also* ECF No. 75-3, at 3.

On August 19, 2015, N.J. filed a second DPC, this time alleging that G.J. had been denied a FAPE for the 2004-05 through 2011-12 school years.  Pls.' 56.1 Counter-Stmt. ¶ 97; JA

---

[4]      IHO Case Number 149863 ultimately concluded with the DOE conceding that G.J. had been deprived of a FAPE for the 2012-13, 2013-14, and 2014-15 school years.  JA 2918.  On January 7, 2017, an IHO awarded compensatory services of, *inter alia*, up to three years of extended eligibility for special education beyond G.J.'s twenty-first birthday or until he achieved a high school diploma, whichever occurred first.  *Id.* at 2930; Pls.' 56.1 Counter-Stmt. ¶¶ 93-94.  G.J. was issued a high school diploma in June 2019.  ECF No. 45, at 1.

2512-27.[5]  On September 21, 2015, N.J. filed an amended DPC, covering the same school years,

which was given IHO Case Number 157971 (the "2015 DPC").  JA 1312-24.[6]  Once again, N.J.

alleged that she had been "prevented . . . from filing" a timely DPC because the DOE had

"misrepresented facts" and that G.J.'s "disabilities were not timely identified and . . . he was

misdiagnosed and not appropriately evaluated to establish his true potential."  JA 1323, ¶ 132.

N.J. also alleged that her claims were not time-barred because she had not received "notice of

[her] applicable rights."  *Id.*  N.J. complained that the DOE had failed to properly evaluate G.J.,

offer appropriate placements, develop valid IEPs, employ appropriate procedures in developing

the IEPs, afford N.J. her IDEA-related procedural rights, and employ proper procedures to assess

and promote G.J.  *Id.* at 1312-13, ¶ 4.

On November 28, 2016, the IHO dismissed N.J.'s claims relating to the 2004-05, 2005-

06, 2006-07, and 2007-08 school years (through February 2008, to be precise).  JA 1330.  The

IHO found that while the accrual date for N.J.'s claims "occurred upon [N.J.'s] receipt of" the

2015 Neuropsychological Evaluation, the DOE "reasonabl[y] . . . follow[ed] the

recommendations" of evaluations conducted in 2004 in developing G.J.'s IEPs.  JA 1328-29.  It

was only in February 2008, the IHO concluded, that the DOE was "on sufficient notice that it

may have misclassified [G.J.'s] educational disability" on the basis of Dr. Kramer's report.  *Id.* at

---

[5]     The DPC filed on August 19, 2015, erroneously lists August 19, *2014*, as the filing date.
JA 2512; *see also* Pls.' 56.1 Counter-Stmt. ¶ 97; JA 2527.  Inexplicably, in describing the error
in Paragraph 97 of their 56.1 Counter-Statement, Plaintiffs further misidentify the date of filing
as August *21*, 2015.  *See* Pls.' 56.1 Counter-Stmt. ¶ 97; *accord* Pls.' 56.1 Counter-Stmt. ¶ 136.

[6]     The DPC filed on August 19, 2015, was designated IHO Case Number 156868.  On
September 21, 2015 — the same date that N.J. filed the 2015 DPC — she also filed an amended
DPC concerning Case Number 156868, "to withdraw without prejudice claims concerning prior
school years and focus the allegations . . . on claims concerning the 2015-2016 school year."  JA
3345, ¶ 2.  Thus, Case Number 156868 came to focus exclusively on the 2015-16 school year,
while Case Number 157971 — the relevant one for purposes of the present action — covered
school years 2004-05 through 2011-12.

1329.  Thus, the IHO concluded, N.J.'s claims after February 2008 could proceed, but those that predated Dr. Kramer's report were barred.  *Id.* at 1330.  Following this order, the IHO held eight hearings with respect to the remaining claims; after seven hearings, the IHO indicated that he had "enough in the record" about G.J. and that, while he was willing to allow additional documentary submissions, he would not allow N.J. to call witnesses.  *Id.* at 17.  Ultimately, on May 7, 2018, the IHO concluded that the DOE had "misdiagnos[ed]" G.J. and ordered that G.J. was eligible for an additional year of extended eligibility beyond his twenty-first birthday (that is, in addition to the relief ordered in IHO Case Number 149863).  *Id.* at 56, 59; *see supra* note 4.

Both Plaintiffs and Defendants appealed the IHO's rulings.  On August 30, 2018, the SRO issued a decision finding that all claims between the 2004-05 and 2011-12 school years, inclusive, were time-barred.  JA 37.  The SRO faulted the IHO for "refus[ing] to allow the [IHO] hearing to proceed on the merits," thereby depriving both parties of their "due process rights to complete their presentation of evidence relevant to the merits of th[e] case."  *Id.* at 24-25.  Despite these procedural defects, however, the SRO declined to remand the matter for further development of the record.  Instead, the SRO found the record sufficient to conclude that all of N.J.'s IDEA claims up to and including the 2011-12 school year were time-barred.  *Id.* at 25, 32-33.  The SRO considered but ultimately rejected N.J.'s argument that "her claims did not accrue until she received the [2015 Neuropsychological Evaluation]" because "she was not on notice of her claims relating to the student's misdiagnosis . . . or the district's failure to adequately evaluate the student prior to that time."  *Id.* at 26.  The SRO also found that, although the IHO had technically "erred by not addressing whether [certain tolling] exceptions applied," N.J. was not ultimately entitled to the exceptions set forth in 20 U.S.C. § 1415(f)(3)(D).  JA 33.  Finally,

the SRO found that she had no jurisdiction to review N.J.'s claims pursuant to Section 504, Section 1983, and the ADA, as well as systemic policy claims.  *Id.* at 24.

**LEGAL STANDARDS**

A party seeking review of an administrative decision under the IDEA usually does so by motion for summary judgment.  *See Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377 (S.D.N.Y. 2006).  "[U]nlike in an ordinary summary judgment motion," however, "the existence of a disputed issue of material fact will not necessarily defeat the motion."  *Bd. of Educ. v. C.M.*, No. 16-CV-3924 (VB), 2017 WL 2656253, at *7 (S.D.N.Y. June 20, 2017), *aff'd sub nom. Bd. of Educ. v. C.M. ex rel. P.G.*, 744 F. App'x 7 (2d Cir. 2018) (summary order).  Instead, "summary judgment in the IDEA context functions as an appeal from an administrative decision."  *Id.* (citing *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam)); *see also M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138-39 (2d Cir. 2013) (noting that such motions form a "pragmatic procedural mechanism for reviewing administrative decisions" (internal quotation marks omitted)).

In such cases, the Court conducts an "'independent' judicial review."  *Walczak*, 142 F.3d at 129 (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205 (1982)).  This entails (1) reviewing the record of the administrative proceedings; (2) hearing additional evidence at the request of a party; and (3) granting such relief as the Court deems appropriate based on the preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(C).  The Supreme Court has explained, however, that conducting an independent judicial review is not an "invitation . . . to substitute" the Court's "own notions of sound educational policy for those of the school authorities [it] review[s]."  *Rowley*, 458 U.S. at 206.  The "district court must base its decision on the preponderance of the evidence," but it must also "give due weight to the administrative proceedings, mindful that the

judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009) (internal quotation marks and alterations omitted).

That said, the Court "is not required to defer to administrative determinations regarding matters of law." *C.M.*, 2017 WL 2656253, at *7 (quoting *K.H.*, 2014 WL 3866430, at *15). Most relevant for present purposes, "where 'the issue on review is the application of the IDEA's statute of limitations,' the Court is called upon 'to interpret the statutory provisions and the law regarding claim accrual,'" which 'does not implicate educational policy decisions.'" *K.C. v. Chappaqua Cent. Sch. Dist.* ("*K.C. I*"), No. 16-CV-3138 (KMK), 2017 WL 2417019, at *8 (S.D.N.Y. June 2, 2017) (quoting *K.H.*, 2014 WL 3866430, at *15). "Because issues regarding when the statute of limitations began to run fall within the purview of the lawyer's expertise, not that of the educator, deference is not owed to the SRO's determination regarding the accrual of Plaintiffs' claims . . . ." *Id.* (internal quotation marks and citation omitted). *But see D.K. ex rel. Stephen K. v. Abington Sch. Dist.*, 696 F.3d 233, 245 (3d Cir. 2012) (finding that "significant deference" is owed to an administrative official's application of IDEA's tolling exceptions).

## DISCUSSION

As noted, Defendants move for partial summary judgment. First and foremost, they ask the Court to affirm the SRO's finding that Plaintiffs' IDEA claims for the 2004-05 through 2011-12 school years were time-barred. They argue that Plaintiffs corresponding claims under the ADA, Section 504, and Section 1983 — which the IHO declined to reach on jurisdictional grounds — are time-barred as well. The Court will address each argument in turn. But first, the Court will consider Plaintiffs' contention that the Court should deny or withhold judgment on

Defendants' partial summary judgment motion pending additional discovery or the introduction of other evidence.  *See* ECF No. 79 ("Pls.' Opp'n Br."), at 30-31.

## A.  Plaintiffs' Request for Additional Discovery or Evidence

Plaintiffs proffer two alternative grounds for their request for additional discovery or evidence.  First, they point to procedural provisions in the IDEA, which state that when a party seeks judicial review of an administrative decision, "the court . . . shall hear additional evidence at the request of a party."  20 U.S.C. § 1415(i)(2)(C)(ii); *see also M.L. v. N.Y.C. Dep't of Educ.*, 943 F. Supp. 2d 443, 444-45 (S.D.N.Y. 2013) (noting that the IDEA's allowance for discovery outside of the confines of the administrative record sets IDEA review apart from judicial review of most other agency actions).  To be sure, "[f]ederal courts reviewing administrative determinations under the IDEA must base their decisions on the preponderance of the evidence, taking into account . . . any further evidence presented before the District Court by the parties." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir. 2003) (internal quotation marks omitted).  But the statute's use of the verb "shall" notwithstanding, "courts do not automatically and uncritically grant any request by a party to submit evidence additional to that contained in the administrative record."  *Genn v. New Haven Bd. of Educ.*, No. 3:12-CV-704 (CSH), 2014 WL 28689, at *1 (D. Conn. Jan. 2, 2014); *see, e.g.*, *Plainville Bd. of Educ. v. R.N.*, No. 3:09-CV-241 (RNC) (DFM), 2009 WL 2059914, at *1-2 (D. Conn. July 10, 2009); *Jordan S. v. Hewlett Woodmere Union Free Sch. Dist.*, No. 08-CV-1446 (LDW) (AKT), 2009 WL 910804, at *2-3 (E.D.N.Y. Mar. 31, 2009).  Instead, "[t]he taking of additional evidence is a matter left to the discretion of the trial court."  *Genn*, 2014 WL 28689, at *1 (cleaned up).  And "a court must be careful not to allow such evidence to change the character of the hearing from one of review to a

trial *de novo*." *Plainville Bd. of Educ.*, 2009 WL 2059914, at *1 (internal quotation marks omitted).

Second, Plaintiffs argue that they should be allowed to take additional discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. Rule 56(d) applies when the non-moving party "cannot present facts essential to justify its opposition" to a summary judgment motion and permits the Court to fashion appropriate relief, including the authorization of additional discovery. Fed. R. Civ. P. 56(d). Plaintiffs are correct to point out that, in general, it is "[o]nly in the rarest of cases [that a court] may [grant] summary judgment . . . against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). Motions for summary judgment in the IDEA context, however, are not like other motions for summary judgment. They offer a "pragmatic procedural mechanism for reviewing administrative decisions," *M.W.*, 725 F.3d at 138 (internal quotation marks omitted), and, in evaluating such motions, the key inquiry is "not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *B.L. v. New Britain Bd. of Educ.*, 394 F. Supp. 2d 522, 532 n.12 (D. Conn. 2005) (Droney, J.) (internal quotation marks omitted).

In light of these standards, the Court declines to grant Plaintiffs' request to supplement the voluminous record, which exceeds 6,000 pages as it is. Plaintiffs' requests for additional discovery broadly fall into several categories, including discovery pertaining to N.J.'s receipt (or lack thereof) of certain notices and documents, ECF No. 80 ("Hyman Decl."), ¶ 79; "systemic policies and practices," pertaining to Alternate Assessment, *id.* ¶ 81; evaluations pertaining to

auditory disorders, *id.* ¶ 72; the relationship between various evaluators and Defendants, *id.* ¶ 59; the nature of Dr. Kramer's 2008 evaluation, *id.* ¶ 65; general scrutiny of the evaluations included in the record, along with their authors, *id.* ¶ 90; and the underlying merits of Plaintiffs' Section 504, Section 1983, and other non-IDEA claims, including various DOE "policies" and "procedures," *id.* ¶¶ 86-87.  Many, if not most, of these requests are not relevant to the relatively circumscribed questions that are presented by the partial motion for summary judgment currently before the Court: whether N.J. knew or had reason to know of the alleged grievances underlying her DPC before August 19, 2013 (or 2012) and whether Defendants misrepresented or withheld information in a manner that would trigger the IDEA's tolling provisions.

Indeed, Plaintiffs offer no "particularized and compelling justification" for the additional evidence they seek.  *Ganje ex rel. J.M.G. v. Depew Union Free Sch. Dist.*, No. 11-CV-665 (RJA) (JJM), 2012 WL 5473491, at *16 (W.D.N.Y. Sept. 26, 2012) (internal quotation marks omitted), *report and recommendation adopted*, 2012 WL 5473485 (W.D.N.Y. Nov. 9, 2012).  To be sure, what notices N.J. received over the eight years at issue here might speak to her knowledge about the issues she ultimately identified in her DPC.  But — as documented below — the existing record provides ample support for the proposition that N.J. was aware of, indeed vociferously complained about, her son's placements and programs.  Similarly, as discussed below, the undisputed record makes plain that N.J. knew or should have known of her rights under the IDEA.  Ultimately, whether N.J. received each and every notice of procedural safeguards is not relevant to the statute-of-limitations issue presently before the Court.  Nor, for that matter, is there reason to scrutinize evaluations or their authors or to engage in discovery related to the underlying merits of Plaintiffs' non-IDEA claims.  Thus, the Court concludes that further discovery and evidence is not necessary before the Court rules on Defendants' motion.

The SRO's conclusion that the IHO improperly deprived Plaintiffs (and Defendants, for that matter) of their "due process rights to complete their presentation of evidence" does not affect the Court's conclusion. JA 24-25. To be sure, courts have suggested that the "improper exclusion of evidence by the administrative agency" is an appropriate reason to allow the record to be supplemented. *See Ganje*, 2012 WL 5473491, at *17 (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd sub nom. on other grounds Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985)). Exercising its discretion, however, the Court concludes that such supplementation is unnecessary here. For starters, N.J. was given ample opportunity to present both documentary and testimonial evidence before the IHO decided the statute-of-limitations question. *See, e.g.*, JA 217-18, 229, 263, 265, 328, 386. She was also given the opportunity to subpoena records on multiple occasions. *See, e.g.*, *id.* at 263, 265, 353-54. And finally, the IHO's decision to prevent N.J. from calling witnesses occurred *after* he had solicited evidence regarding the statute-of-limitations defense and *after* he issued an order deciding that question. *See id.* at 609-10, 612-13, 623. That is, as the SRO noted, any exclusions of evidence go to the "merits of th[e] case," *id.* at 24-25, not to the statute-of-limitations issues that are presently before the Court.

**B.  Plaintiffs' IDEA Claims Relating to the 2004-05 Through 2011-12 School Years**

The Court turns, then, to the central question presented by Defendants' motion: whether Plaintiffs' IDEA claims for the 2004-05 through 2011-12 school years were timely filed. The Court begins with whether N.J. filed the relevant DPC within two years of when the claims accrued. Upon concluding that she did not, the Court turns to whether either of the two statutory "exceptions" to the two-year statute of limitations applies.

**1.  N.J. Failed to File a DPC Within Two Years of Accrual**

As noted, pursuant to amendments to the IDEA that took effect in July 2005, a parent

must "request an impartial due process hearing within 2 years of the date the parent . . . knew or

should have known about the alleged action that forms the basis of the complaint."  20 U.S.C.

§ 1415(f)(3)(C); *see Somoza v. N.Y.C. Dep't of Educ*., 538 F.3d 106, 114 n.7 (2d Cir. 2008).

Courts have held that IDEA plaintiffs have (or should have had) such knowledge when they

"request[] a different placement or additional educational support for the student and their

request [is] denied by the district."  *K.C. II*, 2018 WL 4757965, at *14; *see, e.g*., *Avaras v.

Clarkstown Cent. Sch. Dist*., No. 15-CV-2042, 2017 WL 3037402, at *14-15 (S.D.N.Y. July 17,

2017) (holding that the plaintiff was aware of the district's failings that gave rise to her claims

when the CSE recommended programs and IEP despite the plaintiff's objections); *see also C.M*.,

744 F. App'x at 9-10 (holding that the plaintiffs' claims accrued when the district denied their

request for a residential placement at a CSE meeting while the parents and the student's

psychotherapist insisted the student required a residential placement).  Here, N.J. filed her first

DPC relating to the school years at issue on August 19, 2015.  JA 2512-27.[7]  Thus, to be timely,

the claims relating to these school years had to have accrued on or after August 19, 2013.[8]

---

[7]      The SRO identified September 21, 2015 as the date of filing, *see* JA 12, but that is in fact
the date of the amended DPC, *see id.* at 1312-24.  "Typically a court uses the date of the original
DPC, not the [a]mended DPC, as a starting point to calculate the statute of limitations . . . ."
*Fragnito ex rel. L.F. v. Bd. of Educ.*, No. 19-CV-1598 (CS), 2020 WL 4194804, at *7 n.14
(S.D.N.Y. July 21, 2020).

[8]      Strictly speaking, Plaintiffs raise claims for one school year, 2004-05, that predated the
amendments to the IDEA that took effect in July 2005.  Prior to the amendments, courts
determined the timeliness of IDEA claims by looking to the "most appropriate or analogous state
statute of limitations."  *Somoza*, 538 F.3d at 114 n.7 (internal quotation marks omitted).  In this
case, that would have been N.Y. Educ. Law § 4404(1)(a), which, at the time, established a one-
year limitation period.  *See Somoza*, 538 F.3d at 114 n.7.  The Court need not analyze that year
separately, however, because its finding that the claims for the following year were time-barred

Like the SRO, the Court concludes that they accrued before that date.  Indeed, there is a robust record of N.J.'s dissatisfaction with the ways in which G.J.'s disabilities were being categorized and accommodated going back as far as 2004.  This record includes:

- the September 28, 2004 "Social Update" documenting N.J.'s concerns that G.J. "may be in the wrong placement" because he was not "making adequate progress in school," JA 756;

- the January 5, 2007 "Corrected Social Update" noting that that N.J. was "openly critical about [the school] program not providing enough for" G.J. and "adamant [that UCP was] not meeting [G.J.'s] needs," and also maintaining that there was "a disparity" between the "evaluation team's understanding of [G.J.'s] serious deficits and [his] mother's understanding of his needs," *id.* at 761;

- N.J.'s January 17, 2008 letter to the CSE complaining that G.J. was "not getting the academic challenge that is needed" because "most of the children in his class . . . are lower functioning than he is," *id.* at 1615;

- N.J.'s misgivings, expressed to Dr. Kramer on February 6, 2008, about G.J.'s classmates being too "low functioning" and her desire to transfer G.J. because "he is not being challenged," *id.* at 836, 838;

- the concerns that N.J. expressed to a social worker on March 9, 2008, that the UCP would "baby" G.J. and that he was not being "challenged," *id.* at 977;

- N.J.'s concerns as expressed on the same date to a school psychologist that she was "not satisfied" with the UCP and felt that G.J. "is not being challenged academically," *id.* at 822; and

- N.J.'s September 25, 2008 letter demanding that a CSE reconvene "immediately" because G.J. needed "a less restricted environment," *id.* at 1045.

This record reflects more than a general concern about G.J.'s education or "mere knowledge that [the student] was not making progress."  *Damarcus S. ex rel. K.S. v. District of Columbia*, 190 F. Supp. 3d 35, 46 (D.D.C. 2016).  Instead, it reflects a specific — and persistent — awareness that G.J.'s placement in Alternate Assessment did not sufficiently challenge him academically and

---

under a two-year limitation period means that, *a fortiori*, the claims for the 2004-05 school year were time-barred under a one-year limitation period.

that this placement put him in a classroom where his peers were not functioning at the same level as he was.  *Cf. C.B. v. Pittsford Cent. Sch. Dist*., No. 08-CV-6462 (CJS) (P), 2010 WL 1533392, at *18-19 (W.D.N.Y. Apr. 15, 2010) (finding that a claim did not accrue when a parent sent a single email to the school district complaining about its pace in implementing one aspect of an IEP).  Accordingly, the Court finds that the record fully supports the SRO's conclusion that N.J. "knew or should have known of the alleged actions that form the basis of the complaint by no later than the end of the 2011-12 school year," JA 32, if not earlier.[9]

In arguing otherwise, Plaintiffs lean heavily (as they did before the IHO and SRO) on *Draper v. Atlanta Independent School System*, 518 F.3d 1275 (11th Cir. 2008), and subsequent cases.  *See, e.g.*, JA 27, 1327-28; Pls.' Opp'n Br. 37-38.  In *Draper*, the Eleventh Circuit upheld a district court's finding that an IDEA claim was not time-barred when the child's family "did not have the facts necessary to know that [the child] had been injured by his misdiagnosis and misplacement until they received the results of his [later] evaluation."  518 F.3d at 1288.  The Eleventh Circuit reasoned that the family cannot "be blamed for not being experts about learning disabilities" and rejected the notion that the "family should have known that [the child] had been misdiagnosed and misplaced even before the [s]chool [s]ystem informed [the] family that it had reached that conclusion."  *Id.*; *see Draper v. Atlanta Indep. Sch. Sys*., 480 F. Supp. 2d 1331, 1341 (N.D. Ga. 2007) (district court concluding that the family "did not have the critical facts to know that [the child] had been injured by [the] placement [in classes for students with intellectual disabilities] until they received the results of the testing . . . that confirmed that" the

---

[9]    The SRO also convincingly addressed a series of N.J.'s related contentions concerning the DOE's alleged failure to evaluate or identify any auditory processing disorder, JA 29; any visual motor impairments, *id.*; or any need for assistive technologies, JA 32 n.30.  The Court agrees that the evidence shows N.J. knew or should have known of the underlying issues that form the basis of her complaint regarding G.J.'s alleged deprivation of a FAPE.

child was not intellectually disabled), *aff'd*, 518 F.3d 1275; *Damarcus S.*, 190 F. Supp. 3d at 46-47 (holding that claims did not accrue until the parent was apprised of evaluations that "demonstrated starkly the extent to which [the child] had fallen further behind his peers and the disparity between certain cognitive abilities and his alarmingly low achievement scores"); *K.H.*, 2014 WL 3866430, at *18 (holding that IDEA claims do not accrue until the parent has "the critical facts to know that [the child] ha[s] been injured" (internal quotation marks omitted)); *Gwinnett Cty. Sch. Dist. v. A.A.*, No. 1:09-CV-0445 (TWT), 2010 WL 2838585, at *3 (N.D. Ga. July 16, 2010) (finding that claims were not time-barred when the parents "did not have the facts necessary to know [the child] had been injured until they received the results of [an] evaluation, which showed she had autism and was not mentally impaired").

Invoking *Draper* and its progeny, Plaintiffs argue that, notwithstanding her numerous complaints dating back to 2004, N.J. neither knew nor should have known of G.J.'s *misdiagnosis* until she received the 2015 Neuropsychological Evaluation by Dr. Newman.  *See* Pls.' Opp'n Br. 38-39 (citing *Draper* for the proposition that "[p]arents must be alerted to the underlying cause of their child's disability, not just to its symptoms, to know that their child has been injured by a misdiagnosis").  More specifically, Plaintiffs argue that the 2015 Neuropsychological Evaluation represented the "first time[] a neuropsychologist had diagnosed G.J. with specific learning disabilities" and the "first time . . . N.J. had conclusive . . . information that G.J. had the intellectual capacity to learn and pursue a diploma."  *Id.* at 39; *see also id.* at 17 (describing that, as a result of the 2015 Neuropsychological Evaluation, a "dramatic change" occurred in G.J.'s educational goals, allowing him to switch to the standard assessment track and the opportunity to earn high school credits).  It follows, they contend, that their claims did not accrue until receipt

of the 2015 Neuropsychological Evaluation and that their claims are not barred by the two-year statute of limitations.

This argument is unpersuasive as a matter of both law and fact.  First, as a matter of law, Plaintiffs read too much into *Draper* and its progeny.  Contrary to Plaintiffs' suggestions, these cases do not stand for the proposition that an IDEA claim accrues in every instance only when the parent learns about the *specific* underlying diagnosis.  Instead, the courts in *Draper* and its progeny were concerned with a parent's awareness of the correct diagnosis not for its own sake, but rather because the misdiagnosis concealed awareness of the underlying problems altogether. *See Draper*, 518 F.3d at 1288 (noting that the parents should not have known "something that the trained professionals of the [s]chool [s]ystem did not admit *they* knew" and that "[s]ubstantial evidence supports the finding that, until 2003, [the child's] family did not know enough to realize that [the child] had been injured by his misdiagnosis and misplacement by the [s]chool [s]ystem" (emphasis added)); *K.H.*, 2014 WL 3866430, at *17 (finding the misdiagnosis significant because, as a result, the family "had no reason to know how much progress [the student] was capable of making").  Put differently, the key question is not whether the parent is aware of the particular diagnosis, but whether the parent is aware (or should be aware) that the child has a disability and that the disability is not being adequately accommodated in the classroom.  Here, whether or not N.J. knew the precise diagnosis before the 2015 Neuropsychological Evaluation, there is no reasonable dispute that she knew there may have been problems — that is, that G.J. was disabled and that the DOE was not adequately accommodating him.

Second, as a matter of fact, even if the accrual date did turn on whether and when N.J. acquired specific knowledge of the misdiagnosis, the record belies N.J.'s suggestion that the

2015 Neuropsychological Evaluation was the first instance in which she was aware — or should have been aware — that G.J. was misdiagnosed. For example, as the SRO noted, psychological testing done in April 2008 "reflected a similar constellation of scores as those evidenced in the" 2015 Neuropsychological Evaluation. JA 32.[10]  Additionally, in February 2014 — a year *before* the 2015 Neuropsychological Evaluation — N.J. filed a DPC in which she alleged that her son's "disabilities were not timely identified and . . . that he was misdiagnosed and not appropriately evaluated." JA 3669, ¶ 57; *see also id.* at 3667, ¶ 36 ("There is a significant chance that [G.J.] has not been properly diagnosed and that he has an underlying learning disorder that has not been identified."); *id.* at 3668, ¶ 44 (complaining that G.J.'s high school placement "virtually took him off track [from trying] to earn a regular high school diploma"); *id.* at 3670, ¶ 63 (seeking relief, *inter alia*, in the form of "credit-bearing classes"). Yes, the 2014 DPC concerned different school years (2012-13 through 2014-15) than those at issue here. But N.J.'s allegations about G.J.'s misdiagnosis and the DOE's failure to properly evaluate G.J. were not specific to any particular school year. Read as a whole, the 2014 DPC makes plain that N.J. had "the critical facts to know that [G.J.] had been injured" well before receiving the 2015 Neuropsychological Evaluation. *K.H.*, 2014 WL 3866430, at *18 (internal quotation marks omitted). In sum, therefore, the Court agrees with the SRO that N.J. knew or should have known about the

---

[10]     Two other items in the record suggest that N.J. was aware — or should have been aware — of G.J.'s misdiagnosis well before the 2015 Neuropsychological Evaluation. *First*, notes from an October 2008 CSE meeting (at which, according to the notes, N.J. was present) state that, although G.J. had "low academics[,] . . . MR [mental retardation was] ruled out by [an] outside psychologist." JA 979. *Second*, in February 2008, Dr. Kramer reported that G.J. "had no evidence of mental retardation" and that he "needs to be in school with higher functioning peers," concluding G.J. "likely suffer[ed] from a Learning Disorder" and that "[h]is vocabulary was such as to suggest a functioning within the average range." *Id.* at 838-39. That said, N.J. argues that there is no evidence that she received these documents. *See* Pls.' 56.1 Counter-Stmt. ¶¶ 54, 69. Accordingly, the Court declines to rely on them in connection with its findings.

grievances that formed the basis of her 2015 DPC before August 19, 2013, and that her IDEA claims were thus filed after the two-year limitations period had run its course.

As one final fallback, Plaintiffs suggest that even if N.J. failed to timely file a DPC, G.J. should not be made to answer for his mother's "delinquen[cy]." Pls.' Opp'n Br. 46. Instead, Plaintiffs suggest that G.J.'s claims "did not accrue until he turned twenty-one." *Id.* But this argument finds no basis in any statutory text or case law. The sole authority Plaintiffs cite in support of this proposition is *Keitt v. New York City*, 882 F. Supp. 2d 412, 438-40 (S.D.N.Y. 2011), which held that a claimant's IDEA claims must have accrued by his twenty-first birthday because a child is protected by the statute only until the age of twenty-one. *Keitt* does not come close to supporting Plaintiffs' novel theory that a child has a statute-of-limitations regime separate from the two-year period created by 20 U.S.C. § 1415(f)(3)(C). Furthermore, insofar as Plaintiffs suggest that, in New York, a child's IDEA rights are independent of parental rights, they are incorrect. Although the IDEA does authorize states to transfer parental rights to the child at the age of majority, *see* 20 U.S.C. § 1415(m), New York has not elected to do so, *see Student with a Disability*, Appeal No. 17-077, at 4-5 (N.Y. State Educ. Dep't Nov. 15, 2017), https://www.sro.nysed.gov/common/sro/files/Decisions/2017/pdfversion/17-077.pdf (SRO decision).[11]

---

[11] Plaintiffs further argue that even if most of their claims are time-barred, the date of N.J.'s 2014 DPC filing should be applied to the claims raised in the 2015 DPC on a "relation-back theory." Pls.' Opp'n Br. 49-50. The Court is unconvinced. N.J.'s 2014 DPC was concerned exclusively with the 2012-13 through 2014-15 school years, *see* JA 3664, ¶ 4, none of which are at issue for the purposes of the present motion. *See generally SJB ex rel. Berkhout v. N.Y.C. Dep't of Educ.*, No. 03-CV-6653 (NRB), 2004 WL 1586500, at *8 (S.D.N.Y. July 14, 2004) (finding that "alleged failures to implement different IEPs from different years were each discrete, actionable offenses").

## 2. The Statutory Tolling Exceptions Do Not Apply

As noted, the IDEA includes two "exceptions" to the statute of limitations: "if the parent was prevented from requesting the hearing due to (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local educational agency's withholding of information from the parent that was required under [the IDEA] to be provided to the parent." 20 U.S.C. § 1415(f)(3)(D) (cleaned up). Plaintiffs attempt to invoke both exceptions, but their attempt falls well short.

Plaintiffs argue, first, that the limitation period should be tolled because (1) Defendants "misrepresented to N.J. that [G.J.'s] IEPs and placements" in Alternate Assessment "were designed to help make him progress" and (2) Defendants misrepresented that G.J. was "'mentally retarded' and 'severely cognitively impaired' even though" there was limited evidence to support such a conclusion. Pls.' Opp'n Br. 45. These do not qualify for the statutory exception, however, which, on its face, applies only to "specific misrepresentations" by the DOE "*that it had resolved the problem* forming the basis of [N.J.'s] complaint." 20 U.S.C. § 1415(f)(3)(D)(i) (emphasis added). Indeed, these putative misrepresentations are actually the underlying grievances that form the basis of N.J.'s complaint in the first instance — that G.J. was misdiagnosed and consequently placed in Alternate Assessment — which the DOE refused to resolve in the way N.J. sought. *See C.M.*, 744 F. App'x at 11 (finding no specific misrepresentation when "the problem forming the basis of the complaint was the District's refusal to accede to Parent's request for a residential placement" and "[t]he District never misrepresented that it had resolved the problem by granting a residential placement" (internal quotation marks omitted)). That is, Plaintiffs' "version of events depicts a [DOE] that was

unresponsive to or dismissive of [N.J.'s] concerns" — not one that "represented that it had solved the problem[s]" of which she complained. *Fragnito*, 2020 WL 4194804, at *8.[12]

Meanwhile, Plaintiffs argue that the IDEA's second tolling exception applies because the DOE withheld information that it was required to disclose to N.J. Pls.' Opp'n Br. 41-45. More specifically, Plaintiffs argue that the DOE failed to comply with "[f]ederal and local regulations [that] require a school district to provide parents with a notice of procedural safeguards on certain specified occasions," and at least "once per year." *R.B. ex rel. A.B. v. Dep't of Educ.*, No. 10-CV-6684 (RJS) 2011 WL 4375694, at *6 (S.D.N.Y. Sept. 16, 2011) (Sullivan, J.) (citing 34 C.F.R. § 300.504; 8 N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(f)(3)). But Plaintiffs misunderstand the relevant inquiry. The second tolling exception applies "if a parent d[oes] not know of her rights because of a school district's failure to provide procedural safeguard notices." *C.M.*, 2017 WL 2656253, at *9. It is not sufficient for a parent to argue, as N.J. does here, "that she did not receive *every* required procedural safeguards notice" because the exception is ultimately concerned with whether and when the "[p]arent knew of her rights." *C.M.*, 744 F. App'x at 11 (emphasis added) (internal quotation marks omitted). In this case, it is undisputed that N.J. signed several notices advising her of her due process rights, including in September 2004, March 2008, and December 2008. Pls.' 56.1 Counter-Stmt. ¶¶ 8, 48, 71; JA 745, 817, 935. N.J.'s having "signed . . . acknowledgement[s] of receipt of procedural safeguards" more than two years prior to the filing of her DPC thus prevents her from invoking this tolling exception.

---

[12]     The Third Circuit has endorsed the view that, for the first tolling exception to apply, "the alleged misrepresentation . . . must be intentional or flagrant rather than merely a repetition of an aspect of the FAPE determination." *D.K.*, 696 F.3d at 245 (internal quotation marks omitted). Application of this standard — as Defendants urge, *see* Defs.' Partial MSJ Br. 28 — would provide an additional basis for the Court's conclusion that the specific-misrepresentation exception is inapplicable here. But the Court need not and does not decide whether to adopt the Third Circuit's standard.

*C.M.*, 744 F. App'x at 11 (internal quotation marks omitted); *see also Avaras*, 2017 WL 3037402, at *15 n.22 (finding that the plaintiff was unable to rely on the withholding-of-information exception because of her "ostensible receipt of a procedural safeguards notice and parental guide to the evaluation process . . . and receipt of multiple notices re-advising her of her procedur[al] rights").

In short, neither of the IDEA's two tolling exceptions applies.  Accordingly, Plaintiffs' claims with respect to the 2004-05 through 2011-12 school years are time-barred.

## C.  Plaintiffs' "Systemic" IDEA Claims

Plaintiffs also allege "systemic" IDEA claims.  *See, e.g.*, TAC ¶ 518.  A systemic IDEA claim is one that "implicates the integrity of the IDEA's dispute resolution procedures themselves, or requires restructuring of the education system itself in order to comply with the dictates of the [IDEA]."  *Quatroche v. E. Lyme Bd. of Educ.*, 604 F. Supp. 2d 403, 411 (D. Conn. 2009) (internal quotation marks omitted).  To bring systemic violations, a plaintiff must allege "wrongdoing that is inherent in the program itself and not directed at any individual child."  *Levine v. Greece Cent. Sch. Dist.*, No. 08-CV-6072, 2009 WL 261470, at *8 (W.D.N.Y. Feb. 4, 2009) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 108, 113 (2d Cir. 2004)), *aff'd*, 353 F. App'x 461 (2d Cir. 2009) (summary order).  Plaintiffs do so here: They allege that Alternate Assessment as a whole has been improperly implemented, TAC ¶¶ 96-108, that public school children are not offered reasonable accommodations, *id.* ¶¶ 120-24, and that Defendants employ a "few-sizes-fits-most" approach to special education at the high school level, *id.* ¶¶ 109-19.  Plaintiffs also allege that the SRO below had a conflict of interest, was "bias[ed]," and was otherwise unqualified to adjudicate IDEA claims.  *Id.* ¶¶ 443-48, 457.

These claims survive to see another day.  After all, Defendants' partial summary judgment motion is explicit in scope: It seeks only to affirm the SRO's decision and to bar Plaintiffs' corresponding ADA, Section 504, and Section 1983 claims.  Defs.' Partial MSJ Br. 2.  The SRO, however, declined to exercise jurisdiction over any systemic claims, finding that "[g]enerally, 'systemic violations [are] to be addressed by the federal courts.'"  JA 23 (quoting *Levine*, 2009 WL 261470, at *9).  For that reason alone, the Court declines to grant Defendants summary judgment with respect to Plaintiffs' systemic claims.[13]

**D.  Plaintiffs' Claims Under the ADA, Section 504, and Section 1983**

Finally, Defendants seek summary judgment with respect to some of Plaintiffs' claims under the ADA, Section 504, and Section 1983, arguing that to the extent the claims predate August 19, 2012, they are time-barred.  Defs.' Partial MSJ Br. 2.  The Court agrees.[14]

---

[13]     In light of that conclusion, the Court need not and does not at this time address Plaintiffs' effort to invoke the "continuing violation" doctrine. Pls.' Opp'n Br. 40.  The Court notes, however, that judges in this Circuit have generally been unreceptive to the argument that the "continuing violation" doctrine applies in the IDEA context.  *See, e.g*, *Pape v. Bd. of Educ.*, No. 07-CV-8828 (KMK), 2009 WL 3151200, at *10 n.12 (S.D.N.Y. Sept. 29, 2009); *see also Scaggs v. N.Y. Dep't of Educ*., No. 06-CV-799 (JFB) (VVP), 2007 WL 1456221, at *10 (E.D.N.Y. May 16, 2007) (Bianco, J.) (collecting cases).

[14]     The IHO declined to review N.J.'s ADA, Section 504, and Section 1983 claims and Defendants did not appeal that ruling to the SRO.  *See* JA 23-24.  Citing these facts, Plaintiffs push the argument that Defendants have waived any statute-of-limitations defense with respect to these claims because they did not appeal the IHO's "failure to find that the [Section 504, Section 1983, and ADA] claims . . . were time-barred." Pls.' Opp'n Br. 47.  That argument is entirely unpersuasive.  The IHO did *not* rule one way or another whether N.J.'s non-IDEA claims were time-barred; instead, he declined to hear the claims altogether on jurisdictional grounds.  JA 23-24.  A party's "failure to []appeal an issue not addressed by the IHO one way or the other does not and should not prevent that issue from being preserved for review by the SRO," *FB v. N.Y.C. Dep't of Educ*., 923 F. Supp. 2d 570, 588 (S.D.N.Y. 2013), and — by extension — the court reviewing the SRO's conclusions, *cf. K.C. II*, 2018 WL 4757965, at *10, *17-20 (considering the timeliness of "Section 504 and ADA claims that the IHO declined to consider").

First, Plaintiffs' Section 504 and ADA claims are subject to dismissal for the same reasons that doomed Plaintiffs' non-systemic IDEA claims. Claims under Section 504 and the ADA are "subject to a three-year statute of limitations in New York and accrue when the plaintiff 'knew or had reason to know of the injury serving as the basis for his claim.'" *K.C. II*, 2018 WL 4757965, at *17 (citation omitted) (quoting *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999)). In cases like this one, "where plaintiffs seek relief for the denial of a FAPE under [Section 504 and the ADA] but rely on the same underlying facts regarding the adequacy of a student's education, courts have addressed the timeliness of IDEA, Section 504, and ADA claims, all of which accrue when plaintiffs 'knew or should have known' of the injury, together." *Id.*; *see also K.H.*, 2014 WL 3866430, at *21-22; *Keitt*, 882 F. Supp. 2d at 443. Thus, the Court's analysis with respect to Plaintiffs' IDEA claims "applies with equal force" to Plaintiffs' Section 504 and ADA claims. *K.C. II*, 2018 WL 4757965, at *19.

As for Plaintiffs' Section 1983 claims, "[i]t is well settled that § 1983 does not create any new substantive rights, but merely provides a federal cause of action for violations of certain federal rights." *S.W. ex rel. J.W. v. Warren*, 528 F. Supp. 2d 282, 297 (S.D.N.Y. 2007) (quoting *Mrs. W. v. Tirozzi*, 832 F.2d 748, 754 (2d Cir. 1987)). The statute of limitations for Section 1983 claims is also three years, *Keitt*, 882 F. Supp. 2d at 423 (citing *Paige v. Police Dep't*, 264 F.3d 197, 199 n.2 (2d Cir. 2001) (per curiam)), and such claims accrue "when the plaintiff knows or has reason to know of the harm," *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (internal quotation marks omitted). In this case, Plaintiffs raise Section 1983 claims based on the allegation that Defendants violated their IDEA and Section 504 rights. TAC ¶¶ 540-53. Accordingly, the Court applies the "same analysis" to the timeliness of Plaintiffs' Section 1983

claims as it did to their IDEA claims, *see Keitt*, 882 F. Supp. 2d at 443, and dismisses any such claim that accrued more than three years before the filing of N.J.'s DPC on August 19, 2015.[15]

## CONCLUSION

The SRO noted that she "sympathize[d] with [N.J.]" and could "understand her sense of frustration with what she perceived as a continuing failure by the district to provide a program and placement consonant with [G.J.'s] abilities." JA 32.  The Court shares the SRO's sentiment and has no shortage of sympathy for N.J., who has spent the better part of the last two decades advocating for her son's special needs, and G.J., who by all accounts is a young man with a promising future.  *See, e.g.*, JA 1313, ¶ 9.  But for the reasons stated above, the Court is compelled to conclude — and does conclude — that all of the claims at issue, with the exception of Plaintiffs' systemic claims, are time-barred and must be dismissed.

The parties shall promptly confer and, no later than **fourteen days from the date of this Opinion and Order**, file a joint letter with an update on the status of the case and with proposals for next steps in seeking resolution of all remaining claims.  The letter should also address whether a conference should be held (and, if so, dates on which both counsel would be available) and what steps, if any, the Court could take to facilitate settlement of the remaining claims.

---

[15]     In their reply brief, Defendants suggest for the first time — and even then, only in passing — that an analogous subset of state-law claims should be dismissed as time-barred.  *See* Defs.' Reply Br. 1.  Arguments raised for the first time in a reply brief, however, need not be considered.  *See, e.g.*, *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 169 (2d Cir. 2006); *Tutor Time Learning Ctrs., LLC v. GKO Grp., Inc.*, No. 13-CV-2980 (JMF), 2013 WL 5637676, at *1 (S.D.N.Y. Oct. 15, 2013).  Accordingly, at this juncture, the Court declines to consider any arguments as to the timeliness of Plaintiffs' claims under the New York State Education Law or the New York Constitution.  *See* TAC ¶¶ 554-60.

The Clerk of Court is directed to terminate ECF No. 62 and, in accordance with Rule 25(d) of the Federal Rules of Civil Procedure, to substitute Chancellor Meisha Ross Porter for Chancellor Richard Carranza as Defendant and to update the docket accordingly.

SO ORDERED.

Dated: March 15, 2021
New York, New York

_____
JESSE M. FURMAN
United States District Judge

31